I. Neel Chatterjee (*pro hac vice*)
**GOODWIN PROCTER LLP**
nchatterjee@goodwinlaw.com
601 Marshall St.
Redwood City, California 94063
Telephone: (650) 752-3100
Facsimile: (650) 853-1038

Darryl M. Woo (*pro hac vice*)
**GOODWIN PROCTER LLP**
dwoo@goodwinlaw.com
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 733-6000
Facsimile: (415) 677-9041

*Attorneys for Purple*

C. Michael Judd (14692)
**JONES WALDO HOLBROOK & MCDONOUGH, PC**
mjudd@joneswaldo.com
170 S. Main Street, Suite 1500
Salt Lake City, Utah 84101-1644
Telephone: (801) 534-7478
Facsimile: (801) 328-0537

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PURPLE INNOVATION, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>ADVANCED COMFORT TECHNOLOGIES, INC. d/b/a INTELLIBED,<br><br>        Defendant. | **FIRST AMENDED COMPLAINT**<br><br>Civil No. 2:20-cv-811-JNP<br><br>Judge Jill N. Parrish<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Purple Innovation, LLC ("Purple") hereby alleges and complains against defendant Advanced Comfort Technologies, Inc., dba Intellibed ("ACTI"), as follows:

### THE PARTIES

1.    Plaintiff Purple is a Delaware limited liability company with a principal place of business at 4100 N. Chapel Ridge Road, Suite 200, Lehi, Utah 84043.

2.    On information and belief, defendant ACTI is a Utah corporation with a principal place of business at 1680 South Distribution Drive, Salt Lake City, Utah 84104.

## NATURE OF THE ACTION

3.      ACTI has unlawfully forged a new relationship with the Sleepy's division of Mattress Firm, Inc. ("Sleepy's") to manufacture and sell unauthorized infringing products. This action seeks to stop ACTI's infringing activities and to obtain a declaration of rights related to certain terms of a contract between ACTI and Purple.

4.      This case arises under: the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*; the Lanham Act of the United States for trademark infringement, 15 U.S.C. § 1114; Utah common law for trademark infringement; the Lanham Act of the United States for unfair competition and false designation of origin and false advertising, 15 U.S.C. § 1125(a); the laws of Utah for unfair competition, Utah Code §§ 13-5a-101-103; the Defend Trade Secrets Act of the United States for misappropriation of trade secrets, 18 U.S.C. §§ 1836 *et seq.*; the laws of Utah for misappropriation of trade secrets, Utah Code §§ 13-24-1 *et seq.*; Utah common law for unfair competition; the Utah Truth in Advertising Act for deceptive trade practices, Utah Code §§ 13-11a-2-4; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for a judicial determination of the parties' respective contractual rights and obligations.

## JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), as Purple's causes of action arise under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*; the Federal Trademark Act ("The Lanham Act of 1946"), 15 U.S.C. §§ 1051, *et seq.*, and the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et. seq.* The Court also has subject matter jurisdiction over Purple's declaratory judgment claim under 28 U.S.C. §§ 2201 and 2202. Further, this Court has supplemental jurisdiction over Purple's Utah state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over ACTI. ACTI maintains its headquarters in Salt Lake City, Utah. ACTI committed, and continues to commit, the tortious conduct about which Purple complains, in this District. ACTI's actions are aimed, at least in part, at this District. ACTI

transacts substantial business in this District, including with Sleepy's. ACTI sells infringing products within this District (or causes them to be sold here), and it engages in infringing conduct related to such products. ACTI also directs advertising via Internet in this District, and maintains interactive websites that prominently display versions of its infringing products to consumers at www.intellibed.com and various affiliate websites, accessible by Internet to users/consumers in this District. The infringing products are offered for sale and sold at Mattress Firm stores under the Sleepy's brand throughout the state of Utah, and are advertised to Utah consumers through the Mattress Firm website with ACTI's approval and support.

7.      ACTI acted with full awareness of Purple's intellectual property rights, knows that Purple is headquartered in this District, and engaged in and continues to engage in the willful infringement of Purple's intellectual property rights within this District.

8.      Venue is proper in the District under 28 U.S.C. §§ 1391(b) and 1400(a), because, upon information and belief, and for the reasons set forth herein, a substantial part of the events and rights giving rise to this action occurred in and exist in this District, and ACTI committed acts of infringement and has a regular and established place of business in this District. Additionally, ACTI is incorporated and headquartered in Utah, and therefore resides in this judicial district for the purposes of 28 U.S.C. § 1400(b). Venue is convenient in this District, as many key documents and witnesses reside in or near this District.

## FACTUAL ALLEGATIONS

### Purple's Business and Its Proprietary Rights Related to Gel Matrix® Technology

9.      Purple is a comfort technology company focused on improving how people feel and live through innovative comfort solutions for sitting, standing, and sleeping. Purple designs and manufactures a variety of innovative, premium, branded comfort products, including mattresses, pillows, seat and back cushions, frames, sheets and more.

10.     Purple markets and sells its products through direct-to-consumer online channels, traditional retail partners, third-party online retailers, and its own retail showrooms. From the start, Purple developed a reputation for providing excellent quality, premium comfort products. Purple has been recognized for its innovative products through awards and recognition. Some of Purple's more notable industry recognition includes:

- **J.D. Power 2020 Mattress Satisfaction Report**: Purple received the highest ratings overall, ranking 25 points higher than its competitors in the online mattress category.

- **J.D. Power 2019 Mattress Satisfaction Report**: Purple received highest ratings overall, ranking 29 points higher than the bed-in-a-box category average, and 19 points higher than the overall mattress industry average.

- **Good Housekeeping.com Best Mattresses to Buy Online in 2019:** Original Purple Mattress.

- **2019 Indigo Awards**: Purple Native 360 Ads by Verizon Media Group, Gold in Innovative Use of Mobile Technology 2019 and Silver in Mobile Ads 2019.

- **2019 Men's Health Sleep Awards:** Purple Pillow, Winner.

- **2019 Edison Awards**: The New Purple Mattress, Silver finalist.

- **2019 BIG Innovation Award**: The New Purple Mattress, Winner.

- **2019 American Business Awards**: The Purple Boys, Online Marketing Campaign of the Year – Gold Winner.

- **2018 Digiday Social Campaign Award**: The Purple Boys, Best Creative – Finalist.

- **2018 Best in Biz Award**: The New Purple Mattress, Winner of Best New Version of the Year – Consumer.

11.     Purple's products are the result of over 25 years of innovation and investment in proprietary and patented comfort technologies, and the development of its own manufacturing processes. Purple has accumulated over 100 granted and pending patents that differentiate Purple and its products in the industry from other companies and their products. Purple's proprietary GelMatrix® technology is one such technology. Purple's proprietary GelMatrix® technology provides a range of benefits that differentiates its offerings from other competitors' products.

4

12.    Purple is the owner by assignment of United States Trademark GEL MATRIX, (U.S. Reg. No. 5938419; recorded on August 20, 2020) in connection with "Mattress component, namely, elastic gel material layer or layers located in mattresses sold as an integral component of the mattresses; Furniture; Beds; Mattresses; Mattress foundations; Mattress bases; Pillows; Mattress toppers; Sleeping pads" in International Class 20 (the "GEL MATRIX Mark").

13.    Purple is also the owner by assignment of United States Patent No. 7,666,341 (the "'341 Patent"), entitled, "Screed Mold Method," which was duly and legally issued on February 23, 2010. The '341 Patent issued from U.S. Patent Application No. 10/775,043, filed on February 7, 2004, which was published as U.S. Patent Publication No. 2005/0173836 on August 11, 2005. A true and correct copy of the '341 Patent is attached hereto as EXHIBIT A.

14.    Purple is the owner by assignment of United States Patent No. 7,964,664 (the "'664 Patent), entitled, "Gel With Wide Distribution of Mw In Mid-Block," which was duly and legally issued on June 21, 2011. The '664 Patent issued from U.S. Patent Application No. 11/345,622, filed on February 1, 2006, which was published as U.S. Patent Publication No. 2006/0194925 on August 31, 2006. A true and correct copy of the '664 Patent is attached hereto as EXHIBIT B.

15.    The '341 Patent and the '664 Patent are referred to herein collectively as the "Patents in Suit."

16.    Pursuant to a License Transfer and IP Assignment Agreement dated and made as of August 14, 2020 (the "EdiZONE Agreement"), Purple is the assignee and successor in interest to certain rights and obligations of EdiZONE, LLC, (also known as E-Zone, LLC) ("EdiZONE").

17.    EdiZONE is the assignee and successor in interest of TNT Holdings, LLC ("TNT"), a party to an Amended and Restated License Agreement dated January 28, 2010, as amended (the "License Agreement"), between TNT and ACTI.

18.     On May 1, 2010, TNT assigned all its rights, title, and interests in the License Agreement to EdiZONE, as expressly allowed by Section 13.13 of the License Agreement, without requiring any further amendment or court approval. Section 13.13 provides in relevant part: "Licensor may, at its sole option, assign its rights or obligations hereunder . . . ."

19.     The License Agreement concerns certain elastomer gel technologies including the Gel-Matrix® technology (collectively, the "Gel Matrix Technology").

20.     EdiZONE and ACTI amended certain provisions of the License Agreement pursuant to a Settlement Agreement and First Amendment to the License Agreement made effective and entered as of May 1, 2017 (the "First Amendment").

21.     Except for the modifications in the First Amendment, the License Agreement is in full force and effect. Section 10 of the First Amendment expressly states in relevant part: "Except as expressly modified by the amendments contained in this Agreement, all terms, conditions and provisions of the License Agreement shall continue in full force and effect as set forth therein."

22.     The Patents in Suit are included in the Technology Rights held by Purple pursuant to the License Agreement and EdiZONE Agreement.

23.     The GEL MATRIX Mark is included in the Trademark Rights held by Purple pursuant to the License Agreement and EdiZONE Agreement.

24.     Pursuant to the License Agreement and EdiZONE Agreement, Purple also owns trade secrets in certain manufacturing processes related to the Gel Matrix Technology that are not generally known and not disclosed in any patents or other publications. These trade secrets include certain optimizations to the product molding process, including without limitation, optimizations to significantly reduce if not eliminate unintended and/or undesirable air bubbles trapped in the product (the "Screed Molding Optimizations"), certain optimizations to the extrusion step in the product manufacturing process, including without limitation, optimizations to significantly improve the quality of the extrusion (the "Extrusion Optimizations"), and certain optimizations to the

materials recipes used, including without limitation, optimizations to make the products better looking and more pliable (the "Materials Recipes Optimizations"). The Screed Molding Optimizations, the Extrusion Optimizations, and the Materials Recipes Optimizations, are collectively referred to as the "Purple Trade Secrets". The Gel Matrix Technology is protected by the Purple Trade Secrets as well as by the Patents in Suit and the GEL MATRIX Mark.

25.    In accordance with, and pursuant to the terms and conditions of the License Agreement, ACTI was provided with the Purple Trade Secrets over the course of several meetings, discussions, and conversations between 2007–2016. On information and belief, ACTI has implemented the Purple Trade Secrets in the manufacture of its products.

<u>**ACTI's Business, Agreements with Purple, and Infringing Acts**</u>

26.    Like Purple, ACTI markets and sells mattresses and related products to consumers, including through direct-to-consumer online channels, traditional retail partners, and third-party online retailers.

27.    ACTI is a licensee under the License Agreement. ACTI's license is very limited and conditioned upon compliance with all terms of the License Agreement. To be licensed, a licensed ACTI product must comply with at least the following:

- Purple's "Quality Control" requirement, which ensures that the Gel Matrix Technology products conform to the quality of goods identified by Purple's mark.

- Use the Intellibed name with any ACTI products bearing the Gel Matrix Mark or using the "Licensed Gel Material, Licensed Gel Structure, or Adjustable Shape Pillow" and "not use another mark or name" of ACTI's choosing "to refer to the Licensed Gel Material or Licensed Gel Structure without written permission" of Purple.

- Indicate that the GEL MATRIX Mark belongs to Purple and identify Purple's "city and state."

- Only manufacture the Gel Matrix Technology component parts in products "sold by" ACTI.

- Appropriately mark the Gel Matrix Technology products and "its packaging with the current patent and patent pending status."

28.     The License Agreement further contains an express provision precluding assignment by ACTI "without the advance written consent of Licensor," (i.e., Purple). This provision was endorsed by the District Court for the Third Judicial District in and for Salt Lake County in the State of Utah ("State Court") where the State Court recognized as part of a Amended Permanent Injunction that "the Amended and Restated Licensed Agreement recently executed by TNT Holdings, LLC and ACTI on January 28, 2010 is in full force and effect." (parenthetical omitted).

29.     Purple recently discovered that ACTI is manufacturing mattresses, pillows, and related products ("the Accused Products") for Sleepy's using the GEL MATRIX Mark. The Accused Products include but are not limited to Sleepy's GEL MATRIX Pillow and Sleepy's 12″ Hybrid with GEL MATRIX 5Z Mattress.

30.     The Accused Products do not comply with Purple's authorization requirements and therefore are unauthorized products. The Accused Products, as being unauthorized products outside the scope of the License Agreement, infringe the Patents in Suit, infringe the GEL MATRIX Mark, and misappropriate the Purple Trade Secrets. These unauthorized sales are particularly troubling, as at least some of the Accused Products sell at price points considerably lower than Purple's and Intellibed's competing products, also offered for sale through Mattress Firm.

31.     On September 9, 2020, Purple notified ACTI by letter that ACTI's sale of the Accused Products through Sleepy's was unauthorized, and provided examples as shown below:







32.    In its letter, Purple also proposed corrective measures to remedy ACTI's unauthorized use of Purple's intellectual property rights related to the Accused Products. Purple expressed its concern that the use of the GEL MATRIX Mark with the Sleepy's brand is confusing to consumers and undercuts the creation of brand equity – the value of a product associated with only one company. Without the reference to ACTI (operating under the brand Intellibed), who is the sole licensee of the GEL MATRIX Mark, ACTI's use of that trademark with the Sleepy's brand makes it appear that the trademark is associated with Sleepy's low-end products, not ACTI's premium products, and interfering with the brand equity Purple seeks to promote.

9

33.     This is especially concerning to Purple because Sleepy's products and ACTI's products cater to different market segments and are priced very differently to reach those target markets. Sleepy's products are targeted at the mainstream market and are sold at considerably lower prices compared to ACTI's products sold under its own Intellibed brand that are targeted to reach the high-end market segment.

34.     In its letter, Purple further stated that Purple was unable to identify on ACTI's website the attribution of the GEL MATRIX Mark to Purple in accordance with Section 8.6 of the License Agreement, and if it is not properly attributed, Purple requested that ACTI provide the requisite attribution in compliance with the License Agreement.

35.     ACTI refused to address its unlawful conduct. Instead, ACTI claimed that Purple could not have acquired the License Agreement from EdiZONE.

36.     Because of ACTI's refusal to honor Purple's intellectual property rights and attempts to make meritless claims related to Purple's contractual rights, Purple had no choice but to file this action.

37.     After Purple filed its original complaint against ACTI on November 19, 2020, ACTI notified Purple that ACTI has modified its website (https://www.intellibed.com/patents-and-trademarks/) to provide attribution of ownership of the GEL MATRIX Mark to Purple, including an identification of Purple's city and state, in accordance with Section 8.6 of the License Agreement. As of the date of the filing of the instant amended complaint, ACTI's website, as depicted below, thus admits in relevant part: "Gel Matrix® IS A REGISTERED TRADEMARK OF PURPLE INNOVATION INC, LLC LEHI, UTAH USA." https://www.intellibed.com/patents-and-trademarks/



PROTECTED BY U.S. PATENT 6413458, 6797765, 7076822, 7666341, 5749111, 5994450, 6026527, 7060213 AND OTHER U.S. AND INTERNATIONAL PATENTS PENDING. Gel Matrix® IS A REGISTERED TRADEMARK OF PURPLE INNOVATION INC, LLC LEHI, UTAH USA.

## CAUSES OF ACTION

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,666,341

38.   Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

39.   The '341 Patent is valid and enforceable under United States patent laws.

40.   The claims of the '341 Patent are directed to a screed mold method for continuously or periodically molding thermoplastic material into a cushioning element. The '341 Patent teaches manufacturing processes using open-faced molds that are useful in manufacturing moldable materials, such as thermoplastic materials, and are particularly useful in manufacturing elastomeric articles including articles comprising elastomeric gel. The methods and structures are especially useful in open-face molding of materials that are of high viscosity or otherwise have a difficulty in flowing into the cavities of an open-faced mold.

41.   Claim 1 of the '341 Patent recites:

A screed mold method for making gelatinous elastomer gel cushioning articles, the method comprising the steps of:

attaching side rails around a perimeter of an open face screed mold, the screed mold including a plurality of crisscrossing slots in a rigid body forming a honeycomb shape defining at least one mold core,

providing a separate injection head, the injection head having a plurality of distribution channels therein through which thermoplastic material may flow, and including at least one heating element within it for heating thermoplastic material,

positioning the injection head adjacent the screed mold so that thermoplastic material may flow from the distribution channels into at least one of the plurality of crisscrossing slots,

utilizing a pumping source to introduce thermoplastic material into the injection head, and using the plurality of distribution channels of the injection head to deliver thermoplastic material into at least one of the plurality of crisscrossing slots in the screed mold,

displacing the screed mold and the injection head relative to each other causing the thermoplastic material to be level, and

recovering molded and cooled thermoplastic material from the screed mold in a desired geometric shape of a cushioning element.

'341 Patent, Claim 1.

42.   Claim 16 of the '341 Patent recites:

A screed mold method for making gelatinous elastomer gel cushioning articles, the method comprising the steps of:

providing an open face screed mold having a structural shape in a rigid body in which gel may be formed to take on a desired geometric structure, the structural shape including crisscrossing slots in the rigid body,

positioning an injection head, having a plurality of distribution channels therein through which thermoplastic material may flow,

in close proximity to the screed mold,

utilizing a pumping source to deposit thermoplastic material into the injection head, and distributing the thermoplastic material through the plurality of distribution channels of the injection head, out of at least one exit port of the injection head, into at least one of the crisscrossing slots in the screed mold,

causing the screed mold and the injection head to move relative to each other as the thermoplastic material is deposited into the crisscrossing slots, and

receiving a cushioning element molded by the screed mold.

'341 Patent, Claim 16.

43.    ACTI's Accused Products are outside the scope of the License Agreement and directly infringe at least Claims 1 and 16 of the '341 Patent.

44.    Upon information and belief, ACTI uses a screed mold method for making gelatinous elastomer gel cushioning articles as claimed.

45.    ACTI's infringement as described above has injured and continues to injure and cause damages to Purple.

46.    ACTI has had notice of the '341 Patent application that issued as the '341 Patent since at least January 28, 2010, and notice of its infringement of the '341 Patent at least since September 9, 2020.

47.    Upon information and belief, ACTI has in addition taken, and unless restrained, will continue in the future to take, active steps to induce infringement by others of at least claims 1 and 16 of the '341 Patent in violation of 35 U.S.C. §271(b), including, for example, by inducing third parties to manufacture the Accused Products in the manner described above. Such active steps include, but are not limited to, instructions to enable and facilitate direct infringement by third party manufacturers of the Accused Products, with the specific intent that the third parties manufacture the Accused Products in a manner that infringes at least claims 1 and 16 of the '341 Patent. Upon information and belief, ACTI was either aware of, or willfully blind to, the existence of the '341 Patent since at least as early as February 23, 2010, and performed such acts of inducement with the knowledge and intent that they would lead to acts of direct infringement.

48.    Upon information and belief, ACTI has also contributed to and will continue to contribute to the infringement of at least claims 1 and 16 of the '341 Patent by others, including third-party manufacturers of the Accused Products, in violation of 35 U.S.C. § 271(c). Acts by ACTI that have contributed to the infringement of others include, but are not limited to, making, using, selling or offering to sell, the Accused Products. Such Accused Products contain components that are especially made for or adapted for use in infringing at least claims 1 and 16 of the '341 Patent,

and are not a staple article of commerce and not suitable for substantial non-infringing use. Upon information and belief, ACTI has been aware that the Accused Products contained components that are especially made or adapted for use in infringement of the '341 Patent since at least September 9, 2020.

49.    Additional allegations regarding ACTI's knowledge of the '341 Patent will likely have further evidentiary support after a reasonable opportunity for discovery.

50.    By its actions, ACTI has caused injury and damages to Purple.

51.    ACTI's infringement of the '341 Patent has been and continues to be willful and deliberate, as ACTI has acted in at least an objectively reckless manner in view of the high likelihood that its acts constituted infringement of the '341 Patent, and with full knowledge of Purple's rights in the '341 Patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,964,664

52.    Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

53.    The '664 Patent is valid and enforceable under United States patent laws.

54.    The claims of the '664 Patent are directed to a gelatinous elastomer comprising an A-B-A triblock copolymer and a plasticizer useful, for example, in casting fine-detail molds at a low processing temperature. The gelatinous elastomer comprises copolymer molecules having molecular weights generally evenly distributed across a range of molecular weights rather than having a relatively narrow molecular weight distribution centered about a single molecular weight. The A-B-A triblock copolymer may include SEBS, SEEPS, or other triblock copolymers. The plasticizer may include mineral oil or other plasticizing fluids. Purple has at all times relevant, marked its products that embody the technology claimed in the '664 Patent.

55.    Claim 1 of the '664 Patent recites:

A gelatinous elastomer cushion for cushioning a body of a person, comprising:

styrene-ethylene-butylene-styrene triblock copolymer molecules, and

14

a plasticizer,

the triblock copolymer molecules and the plasticizer being mixed to form a gelatinous elastomer shaped to form the cushion for cushioning a body of a person,

wherein at least 80% of the triblock copolymer molecules have molecular weights generally evenly distributed between 150,000 and 250,000, and wherein no more than 50% of the styrene-ethylene-butylene-styrene triblock copolymer molecules have any one molecular weight between 150,000 and 250,000.

'664 Patent, Claim 1.

56.    Claim 5 of the '664 Patent recites:

A gelatinous elastomer cushion for cushioning a body of a person, comprising:

styrene-ethylene-butylene-styrene triblock copolymer molecules, and

a plasticizer,

the triblock copolymer molecules and the plasticizer being mixed to form a gelatinous elastomer and shaped to form the cushion for cushioning a body of a person,

wherein at least 80% of the triblock copolymer molecules have molecular weights generally evenly distributed between 100,000 and 300,000, and wherein a distribution of the molecular weights of the triblock copolymer molecules between 100,000 and 300,000 is not centered about a single data point.

'664 Patent, Claim 5.

57.    Claim 8 of the '664 Patent recites:

A gelatinous elastomer cushion for cushioning a body of a person, comprising:

styrene-ethylene-butylene-styrene triblock copolymer molecules, and

a plasticizer,

the triblock copolymer molecules and the plasticizer being mixed to form a gelatinous elastomer and shaped to form the cushion for cushioning a body of a person,

wherein at least 95% of the triblock copolymer molecules have molecular weights generally evenly distributed between 150,000 and 400,000, and wherein no more than 50% of the styrene-ethylene-butylene-styrene triblock copolymer molecules have any one molecular weight between 150,000 and 400,000.

'664 Patent, Claim 8.

58.    ACTI's Accused Products are outside the scope of the License Agreement and directly infringe at least Claims 1, 5, and 8 of the '664 Patent.

59.     ACTI's infringement as described above has injured and continues to injure and cause damages to Purple.

60.     ACTI has had notice of the '664 Patent application that issued as the '664 Patent since at least January 28, 2010, and notice of its infringement of the '664 Patent at least since September 9, 2020. ACTI also has had constructive notice of the '664 Patent through the marking of the '664 Patent on products that embody the technology claimed in the '664 Patent.

61.     In addition, ACTI has taken, and unless restrained, will continue in the future to take, active steps to induce infringement by others of at least claims 1, 5, and 8 of the '664 Patent in violation of 35 U.S.C. §271(b), including, for example, by inducing third parties to make, use, offer for sale, sell, and/or import into the United States the Accused Products in the manner described above. Such active steps include, but are not limited to, distributing the Accused Products and instructions to enable and facilitate direct infringement by third party manufacturers, sellers, and importers of the Accused Products, with the specific intent that the third parties make, use, offer for sale, sell, and/or import such Accused Products in a manner that infringes at least claims 1, 5, and 8 of the '644 Patent. Upon information and belief, ACTI was either aware of, or willfully blind to, the existence of the '664 Patent since at least as early as June 21, 2011, and performed such acts of inducement with the knowledge and intent that they would lead to acts of direct infringement.

62.     Upon information and belief, ACTI has also contributed to and will contribute to the infringement of at least claims 1, 5, and 8 of the '664 Patent by others, including third-party manufacturers, sellers, and importers of the Accused Products, in violation of 35 U.S.C. § 271(c). Acts by ACTI that have contributed to the infringement of others include, but are not limited to, making, using, offering for sale, selling, and/or importing into the United States the Accused Products. Such Accused Products contain components that are especially made for or adapted for use to infringe at least claims 1, 5, and 8 of the '664 Patent, and are not a staple article of commerce and

not suitable for substantial non-infringing use. Upon information and belief, ACTI has been aware that the Accused Products contained components that are especially made or adapted for use in infringement of the '664 Patent since at least September 9, 2020.

63.    Additional allegations regarding ACTI's knowledge of the '664 Patent will likely have further evidentiary support after a reasonable opportunity for discovery.

64.    By its actions, ACTI has caused injury and damages to Purple.

65.    ACTI's infringement of the '664 Patent has been and continues to be willful and deliberate, as ACTI has acted in at least an objectively reckless manner in view of the high likelihood that its acts constituted infringement of the '664 Patent, and with full knowledge of Purple's rights in the '664 Patent. For these reasons, Purple is entitled to enhanced damages pursuant to 35 U.S.C. § 284, including attorneys' fees and costs pursuant to 35 U.S.C. §285.

**COUNT III – FEDERAL TRADEMARK INFRINGEMENT - 15 U.S.C. § 1114**

66.    Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

67.    ACTI used and is continuing to use the GEL MATRIX Mark in commerce to advertise, promote, market, and sell premium branded Intellibed products, as well as the Accused Products, throughout the United States including Utah.

68.    ACTI has both actual and constructive knowledge of Purple's ownership of and rights in the GEL MATRIX Mark.

69.    ACTI offers its goods and services related to the Accused Products under the GEL MATRIX Mark in the same channels of trade as those in which Purple's legitimate goods and services are offered. ACTI's conduct in using the GEL MATRIX Mark with respect to the Accused Products is outside the scope of the License Agreement and without Purple's approval. Further, ACTI's use of the GEL MATRIX Mark on its website is unauthorized because it does not identify Purple as the owner of the mark and does not identify Purple's city and state.

70.     ACTI's use of the GEL MATRIX Mark in connection with the Accused Products is outside the scope of the License Agreement, infringing on the GEL MATRIX Mark, and likely to cause confusion, mistake, and deception among the relevant consumers, the public, and the trade in light of Purple's registered GEL MATRIX Mark. Indeed, by searching the Mattress Firm web-site, ACTI's unauthorized GEL MATRIX pillow is identified as being "frequently bought" with Purple sheet sets and mattress protectors.

71.     ACTI's conduct is outside the scope of the License Agreement, without authorization from Purple, and has been undertaken with prior and continuing knowledge of Purple's rights in, and federal registration of, the GEL MATRIX Mark.

72.     ACTI's activities as described above constitute willful and intentional infringement of the GEL MATRIX Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT IV – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN - 15 U.S.C. § 1125

73.     Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

74.     As the owner of the GEL MATRIX Mark, Purple has the right to monitor the use of the GEL MATRIX Mark to preserve its brand image and equity and that mark's association with premium, high quality products targeted to the luxury market. ACTI is authorized to use the GEL MATRIX Mark but in a manner limited by the License Agreement.

75.     ACTI's use of the GEL MATRIX Mark with the Sleepy's brand, which is targeted to the mainstream market, is not unauthorized under the License Agreement. ACTI's use of the GEL MATRIX Mark in this manner is confusing to customers and undercuts the brand value of the GEL MATRIX Mark as being associated only with premium products targeted to the high-end market.

76.     By engaging in infringing use of the GEL MATRIX Mark, ACTI has deliberately and willfully attempted to trade on the goodwill associated with the GEL Matrix Mark.

77.     ACTI's infringing conduct has also deprived and will continue to deprive Purple of the ability to control the perception of the products and services offered under the marks owned by Purple like the GEL MATRIX Mark, placing the valuable reputation and goodwill of Purple in the hands of ACTI and third parties selling the Accused Products.

78.     ACTI's conduct is outside the scope of the License Agreement and likely to cause confusion, mistake or deception as to the affiliation, connection or association of ACTI's products with Purple, as well as to the origin, sponsorship or approval of ACTI and its products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

79.     ACTI's activities outside the scope of the License Agreement as described above constitute the use of false designations of origin in commerce, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80.     ACTI had direct and full knowledge of Purple's prior use of and rights in its marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117.

81.     As a result of ACTI's above-mentioned conduct, Purple has suffered commercial damages, as well as the continuing loss of goodwill and reputation established by Purple in its name, marks and products (including but not limited to the GEL MATRIX Mark). This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Purple has no adequate remedy at law.

82.     Purple will continue to suffer irreparable harm unless this Court enjoins ACTI's conduct.

### COUNT V – UTAH COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

83.     Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

84.    ACTI has deliberately and willfully attempted to trade on the goodwill in the GEL MATRIX Mark and that brand's reputation as a premium product.

85.    ACTI's conduct has also deprived and will continue to deprive Purple of the ability to control the consumer perception of its products and services as premium products, damaging or destroying the GEL MATRIX Mark as a premium brand.

86.    ACTI's conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of the Accused Products with Purple's premium GEL MATRIX Mark, as well as to the origin, sponsorship or approval of the accused Sleepy's branded products, in violation of Utah common law.

87.    As a result of ACTI's aforesaid conduct, Purple has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Purple in its marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Purple has no adequate remedy at law. Purple will continue to suffer ir-reparable harm unless this Court enjoins ACTI's conduct.

## COUNT VI – FEDERAL UNFAIR COMPETITION AND FALSE ADVERTISING – 15 U.S.C. § 1125

88.    Purple realleges and incorporates by reference the foregoing paragraphs of this Com-plaint as though set forth fully herein.

89.    ACTI's unauthorized and unlawful actions include, without limitation: ACTI's use of Purple's GEL MATRIX Mark in commerce to advertise, market, promote, and sell the Accused Products containing Purple's GEL MATRIX Mark throughout the United States including Utah; its false and misleading representations regarding Purple's GEL MATRIX Mark; and ACTI's knowledge, participation, and inducement thereof, constitute unfair competition and false adver-tising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.     The relevant purchasing public is likely to be misled and deceived by ACTI's dissem-ination of false and misleading documents, statements and misrepresentations that ACTI knew or should have known that its documents and statements were false or likely to mislead.

91.     As an actual and proximate result of ACTI's willful and intentional actions, Purple has suffered damages in an amount to be determined at trial, and unless ACTI is enjoined, Purple will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

92.     Pursuant to 15 U.S.C. § 1117, Purple is entitled to damages for ACTI's Lanham Act violations, and an accounting for profits made by ACTI on sales of the Accused Products, as well as recovery of Purple's costs of this action. Furthermore, ACTI's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Purple to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT VII – MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW, 18 U.S.C. §§ 1836 *et. seq.*

93.     Purple realleges and incorporates by reference the foregoing paragraphs of this Com-plaint as though set forth fully herein.

94.     Purple owns confidential proprietary, technical, and business information with respect to its Gel Matrix Technology, including manufacturing processes for making thermoplastic and elastomeric materials, which information, including without limitation the Purple Trade Secrets, constitutes trade secrets under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*

95.     The Purple Trade Secrets relate to products and services used in interstate commerce and derive independent economic value from not being generally known to the public or to persons who can obtain economic value from their disclosure or use. For example, a competitor like ACTI with access to the Purple Trade Secrets could and did in fact avoid having to invest millions of

dollars and thousands of man-hours to research and develop the technology that Purple invested in the Gel Matrix Technology, including trade secrets related to that technology.

96.     Purple has taken commercially reasonable steps to preserve the confidentiality of the Purple Trade Secrets. These steps include: requiring its employees to sign confidentiality agreements; using passwords to protect access to confidential information on computer computers and electronic storage devices; using nondisclosure agreements with vendors and distributors preserving confidential information and trade secrets; and disclosing its confidential information and trade secrets only to those Purple employees with a need-to-know.

97.     As a Licensee of the License Agreement, ACTI had access to the Purple Trade Secrets.

98.     ACTI, with full knowledge of Purple's ownership of, and rights to, its trade secrets, is using the Purple Trade Secrets outside the scope of the License Agreement and without authorization to design, manufacture, market, and sell the Accused Products.

99.     ACTI's misappropriation of the Purple Trade Secrets has been intentional, knowing, willful, malicious, fraudulent, and oppressive.

100.    If ACTI's conduct is not remedied, ACTI will continue to misappropriate and use the Purple Trade Secrets for its own benefit, and to Purple's detriment.

101.    As the direct and proximate result of ACTI's above-mentioned conduct, and unless ACTI is enjoined, Purple has suffered and will continue to suffer damages and irreparable injury for which Purple has no adequate remedy at law.

### COUNT VIII – MISAPPROPRIATION OF TRADE SECRETS UNDER UTAH LAW, UTAH CODE §§ 13-24-1 *et. seq.*

102.    Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

103.    For all the same reasons as set forth in the DTSA claim, ACTI has misappropriated the Purple Trade Secrets under Utah State law.

104.   ACTI's misappropriation of the Purple Trade Secrets has been intentional, knowing, willful, malicious, fraudulent, and oppressive.

105.   If ACTI's conduct is not remedied, ACTI will continue to misappropriate and use the Purple Trade Secrets for its own benefit, and to Purple's detriment.

106.   As the direct and proximate result of ACTI's above-mentioned conduct, unless ACTI is enjoined, Purple has suffered and will continue to suffer damages and irreparable injury for which Purple has no adequate remedy at law.

### COUNT IX – DECEPTIVE TRADE PRACTICE UNDER UTAH CODE §§ 13-11a-2-4

107.   Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

108.   ACTI's aforementioned willful acts of infringement of Purple's GEL MATRIX Mark constitute a deceptive trade practice under Utah Code § 13-11a-3.

109.   ACTI has unlawfully sold products using Purple's GEL MATRIX Mark without Purple's approval.

110.   ACTI's acts have caused and are likely to continue to cause confusion or deception.

111.   Pursuant to Utah Code § 13-11a-4, Purple is entitled to injunctive relief, monetary damages, an award of costs, and attorneys' fees.

### COUNT X – UNFAIR COMPETITION UNDER UTAH CODE §§ 13-5a-101-103

112.   Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

113.   ACTI's acts constitute unlawful infringement of Purple's GEL MATRIX Mark and of the Patents in Suit. ACTI's acts have caused and are likely to continue to cause a material diminution in the value of Purple's GEL MATRIX Mark.

114.   ACTI has engaged and continues to engage in these activities intentionally.

115.   By its acts and omissions set forth above, ACTI is violating Utah Code §§ 13-5a-101-103.

116.   ACTI's acts of trademark infringement and false designation of origin, unless enjoined by this Court, are causing Purple to sustain, and unless ACTI is enjoined, will continue to cause Purple to sustain irreparable injury, and Purple has no adequate remedy at law.

117.   ACTI has made and will continue to make substantial profits to which it is not, in law or equity, entitled.

118.   There is no legitimate hardship to ACTI in being compelled to stop and correct its infringing conduct. Public policy also favors the relief that Purple seeks.

119.   Pursuant to Utah Code § 13-5a-103, Purple is entitled to monetary damages, an award of costs and, because the circumstances warrant, punitive damages.

## COUNT XI – UTAH COMMON LAW UNFAIR COMPETITION

120.   Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

121.   ACTI's willful acts of infringement of Purple's GEL MATRIX Mark constitute unfair competition in violation of Utah common law.

122.   ACTI has unlawfully sold products using Purple's GEL MATRIX Mark without Purple's approval.

123.   ACTI's acts have caused and are likely to continue to cause confusion or deception.

## COUNT XII – DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201 and 2202

124.   Purple realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

125.   Purple seeks a declaration of rights related to Section 13.13 of the License Agreement. Under Section 13.13 of the License Agreement, EdiZONE has assigned its rights and obligations

under the License Agreement to Purple, making Purple the "Licensor," and ACTI is the "Licensee"

under the License Agreement. Section 13.13 provides, in relevant part:

> Licensee shall not, and Licensee has neither the right nor the power to, assign the License or this Agreement to any other person or entity without the advance written consent of Licensor. In the event that Licensee merges with any other entity, changes its name, or otherwise transforms into a new entity, this Agreement shall be deemed binding upon and enforceable against such new or other entity. Licensor may, at its sole option, assign its rights or obligations hereunder, provided that any third party beneficiaries of third party delegates agree in writing that such assignment to which third party beneficiaries or third party delegates are parties is subject to the applicable terms and conditions of this Agreement.

126.   The Permanent Injunction from the State Court adopted this provision and specifically

stated that "the Amended and Restated License Agreement recently executed between TNT Holdings, LLC and ACTI on January 28, 2010 is in full force and effect" (parenthetical omitted). The

Permanent Injunction also contemplated that the rights under the License Agreement could be

transferred when it later referred to "transferees" and "any . . . entity that claims to own or control

any of the intellectual property rights licensed to ACTI under the terms of the New License Agreement."

127.   Indeed, on May 1, 2010, TNT properly assigned all its rights, title, and interests in the

License Agreement to EdiZONE, as expressly allowed by Section 13.13 of the License Agreement,

which states in relevant part that the "Licensor may, at its sole option, assign its rights or obligations hereunder." Based on this explicit language, TNT did not have to obtain any court approval,

and nor was one necessary, for this assignment. By the same token, EdiZONE properly assigned

all its rights, title, and interests in the License Agreement to Purple.

128.   As alleged above, by modifying its website in response to Purple's letter of September

9, 2020, and after the original complaint was filed, ACTI has admitted not only that the Gel Matrix® trademark belongs to Purple, but that Purple has, as the current licensor under the License

Agreement, properly acquired all rights, title, and interests in the License Agreement from Edi-ZONE. For ACTI to contend otherwise would be inconsistent, if not contrary to its public admission.

129.   Nevertheless, ACTI claims that section 13.13 of the License Agreement is invalid because the Permanent Injunction states that the "Enjoined Parties are enjoined from transferring or attempting to transfer ACTI's intellectual property rights, including but not limited to ACTI's rights in the License granted under the New License Agreement, to any third party."

130.   The only reasonable reconciliation of these two terms of the Permanent Injunction is that ACTI was permitted to continue using the GEL MATRIX Mark in the way it had been authorized to use the mark and that any acquiror could not interfere with that use.

131.   An actual and justiciable controversy has arisen and exists between Purple and ACTI regarding the parties' respective rights and obligations under the License Agreement. ACTI has claimed that it may assign its rights under the License Agreement without Purple's authorization, and that Purple could not acquire EdiZONE's interest in the License Agreement without ACTI's authorization.

132.   ACTI's interpretation is incorrect and would require a rejection of the State Court's express order adopting the License Agreement and statement that it is "in full force and effect." Specifically, Section 13.13 expressly provides that EdiZONE could assign the License Agreement to Purple without the consent of ACTI, which EdiZONE did pursuant to that section. In addition, section 13.13 expressly provides that ACTI cannot assign the License or the License Agreement without Purple's express advance written consent.

133.   Purple therefore seeks a declaratory judgment to the effect that: (1) pursuant to section 13.13 of the License Agreement and the Permanent Injunction, EdiZONE could and did assign the License and License Agreement to Purple without needing ACTI's consent or approval, and that

Purple properly acquired its rights under the License Agreement; and (2) ACTI cannot assign the License or the License Agreement without the advance written consent of Purple.

## **PRAYER FOR RELIEF**

WHEREFORE, Purple respectfully requests that the Court grant judgment in favor of Purple and against defendant ACTI, as follows:

A.     Finding that ACTI has infringed and continues to infringe the Patents in Suit;

B.     Finding that ACTI's infringement has been willful and presents an exceptional case within the meaning of 35 U.S.C. § 285;

C.     Finding that ACTI has infringed Purple's GEL MATRIX Mark, and that ACTI's infringement has been willful under federal and Utah law;

D.     Finding that ACTI is liable for misrepresenting the origin of Purple's GEL MATRIX Mark, falsely advertising Purple's GEL MATRIX Mark, deceiving consumers, and unfairly competing against Purple under federal and Utah law;

E.     Finding that ACTI has misappropriated the Purple Trade Secrets under federal and Utah law, and that ACTI's misappropriation has been willful and malicious;

F.     Permanently enjoining ACTI, and its officers, agents, servants, employees, parents, subsidiaries, affiliates, and attorneys, and those in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from making, selling, offering for sale, importing, marketing, or using the Gel Matrix Technology and from engaging in any other infringement of the Patents in Suit, along with all other equitable remedies and relief, as appropriate;

G.     Permanently enjoining ACTI, and its officers, agents, servants, employees, parents, subsidiaries, affiliates, and attorneys, and those in active concert or participation with them who receive actual notice of the order by personal service or otherwise, along with all other equitable remedies and relief, as appropriate:

a)     from displaying, advertising or using in any manner the GEL MATRIX Mark in connection with the Accused Products;

b)      from doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, prospective customers of Purple's products or services, and prospective customers of ACTI's products or services, as to the source of the GEL MA-TRIX Mark associated with the Accused Products offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between the Accused Products and Purple;

c)      from making any representations, express or implied, that Purple is affiliated with or sponsors or approves of the Accused Products;

d)      to promptly remove the GEL MATRIX Mark associated with the Accused Products from the Mattress Firm website and all other websites within their control, including removal of related metadata on such websites;

H.      Permanently enjoining ACTI, and its officers, agents, servants, employees, parents, subsidiaries, affiliates, and attorneys, and those in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from using the Purple Trade Secrets and from making, marketing, offering for sale and selling any products that use or otherwise embody the Purple Trade Secrets, along with all other equitable remedies and relief, as appropriate;

I.      Declaring that Purple has properly acquired the License Agreement from EdiZONE;

J.      Declaring that ACTI is precluded from assigning the License or the License Agreement, including without limitation, the intellectual property rights under the License Agreement, without Purple's advance written consent;

K.      Directing ACTI to provide an accounting of all revenues and profits derived from its unauthorized use of Purple's GEL MATRIX Mark;

L.      Ordering ACTI to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all Internet webpages / scripts / html code, articles, packages, wrappers, products, displays, labels, signs, promotional items, clothing, literature, sales aids, or other matter in

the possession, custody, or under the control of ACTI or its agents bearing the GEL MATRIX Mark in connection with the Accused Products;

M.     Ordering ACTI to retain and disclose all communications with all individuals and entities with whom they engaged in any transaction relating to or arising from the use of the GEL MATRIX Mark in the Accused Products;

N.     Ordering ACTI, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Purple within thirty (30) days after entry of the injunction a written report under oath describing in detail the manner and form in which ACTI has complied with the injunction, including ceasing all offering of goods and services related to the Accused Products as set forth above;

O.     Awarding damages, including but not limited to compensatory, punitive, and exemplary damages, and profits derived from ACTI's wrongful conduct, and equitable relief, in favor of Purple and against ACTI in an amount to be determined at trial, and awarding costs and attorney fees, with pre- and post-judgment interest on all amounts owed, as allowed by all applicable law in each of the above claims, including;

a)     An award of damages of no less than a reasonable royalty pursuant to 35 U.S.C. § 284, including up to three times the amount of compensatory damages associated with ACTI's infringement of the Patents in Suit;

b)     An award of attorney fees pursuant to 35 U.S.C. § 285 associated with ACTI's infringement of the Patents in Suit on a finding that this is an exceptional case;

c)     An award of actual damages sustained by Purple and all of ACTI's profits from ACTI's wrongful conduct complained of herein, up to and including three times the sum of actual damages, as well as costs and attorney fees on a finding that this is an exceptional case pursuant to 15 U.S.C. § 1117 and/or Utah law associated with ACTI's unauthorized use and infringement of the GEL MATRIX Mark;

d)     An award of actual damages, punitive damages, costs, and attorney fees pursuant to Utah Code § 13-5a-103(1)(b);

e)      An award of damages, costs, and attorney fees pursuant to Utah Code § 13-11a-4(2);

f)      An award of damages for actual loss caused by ACTI's misappropriation of the Purple Trade Secrets, damages for unjust enrichment caused by ACTI's misappropriation of the Purple Trade Secrets that is not addressed in computing damages for actual loss, and damages caused by ACTI's misappropriation of the Purple Trade Secrets measured by imposition of liability for a reasonable royalty for ACTI's unauthorized use of the Purple Trade Secrets, pursuant to 18 U.S.C. § 1836(b)(3)(B) and Utah Code § 13-24-4(1); and exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and Utah Code § 13-24-4(2), including and up to two times the award of damages, as well as attorney fees under 18 U.S.C. § 1836(b)(3)(D) and Utah Code § 13-24-5 on a finding that ACTI's misappropriation of the Purple Trade Secrets has been conducted in a willful and malicious manner; and

P.      Awarding Purple such further relief as this Court deems just and proper.

## JURY DEMAND

Purple hereby demands, pursuant to Fed. R. Civ. P. 38, a trial by jury of all issues so triable.

Dated: January 27, 2021.

*/s/ C. Michael Judd*

I. Neel Chatterjee (*pro hac vice*)
nchatterjee@goodwinlaw.com
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, California 94063
Telephone: (650) 752-3100
Facsimile: (650) 853-1038

Darryl M. Woo (*pro hac vice*)
dwoo@goodwinlaw.com
GOODWIN PROCTER LLP
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 733-6000
Facsimile: (415) 677-9041

C. Michael Judd
mjudd@joneswaldo.com
JONES WALDO HOLBROOK & MCDONOUGH, PC
170 S. Main Street, Suite 1500
Salt Lake City, Utah 84101-1644
Telephone: (801) 534-7478
Facsimile: (801) 328 0537

*Attorneys for Plaintiff Purple Innovation LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 27, 2021, I caused to be delivered, via the court's electronic filing system, email, or otherwise by first class mail postage prepaid if needed, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** to the following:

> Kenneth B. Black
> ken.black@stoel.com
> STOEL RIVES LLP
> 201 South Main Street, Suite 1100
> Salt Lake City, Utah 84111
>
> Laura Kabler Oswell (*pro hac vice*)
> oswelll@sullcrom.com
> Duncan C. Simpson LaGoy (*pro hac vice*)
> simpsond@sullcrom.com
> Aviv S. Halpern (*pro hac vice*)
> halperna@sullcrom.com
> SULLIVAN & CROMWELL LLP
> 1870 Embarcadero Road
> Palo Alto, California 94303
>
> *Attorneys for ACTI*

By: /s/ *C. Michael Judd*
C. Michael Judd

33