FILED
2021 SEP 28 AM 10:34
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURPLE INNOVATION, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ADVANCED COMFORT TECHNOLOGIES, INC., dba INTELLIBED,<br><br>　　　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS PURPLE'S ACTION WITHOUT PREJUDICE AND DISMISSING ADVANCED COMFORT'S CROSSCLAIMS WITHOUT PREJUDICE FOR LACK OF SUBJECT MATER JURISDICTION<br><br>Case No. 2:20-cv-00811-JNP-CMR<br><br>District Judge Jill N. Parrish |

　　Purple Innovation, LLC licenses to Advanced Comfort Technologies, Inc., dba Intellibed, certain technologies and trademarks related to mattresses, mattress covers, and pillows. Purple sued Advanced Comfort for patent infringement, trademark infringement, and a number of other related claims. Purple alleges that Advanced Comfort infringed its intellectual property rights because Advanced Comfort exceeded the scope of the license agreement. Advanced Comfort countersued, asserting counterclaims for declaratory relief, tortious interference, and breach of the license agreement.

　　Before the court is Advanced Comfort's motion to dismiss, which the court has converted in part to a motion for summary judgment. ECF No. 46. The court GRANTS IN PART the motion and dismisses Purple's action without prejudice. Purple also moved to dismiss some of Advanced Comfort's counterclaims. ECF No. 40. The court finds that this motion is MOOT because the court no longer has subject matter jurisdiction over the counterclaims. The court dismisses the counterclaim action without prejudice for lack of jurisdiction.

## BACKGROUND

TNT Holdings, LLC entered into an Amended and Restated License Agreement with Advanced Comfort. Under this agreement, TNT granted a license to Advanced Comfort to use certain technologies and trademarks related to mattresses, mattress covers, and pillows. The agreement permitted Advanced Comfort to manufacture and sell products using TNT's patented Gel Material and Gel Structure technologies. Advanced Comfort also received the right to use a number of trademarks on products manufactured with these technologies.

The license agreement contains a mandatory dispute resolution clause, which provides:

> Before any necessary legal action is pursued by one Party against another Party of this Agreement pertaining to this Agreement or any alleged breach of this Agreement, including but not limited to an uncured breach or other event resulting in termination as provided in this Agreement, any such dispute will be raised in a written notice as provided in this paragraph above . . . .

The dispute resolution clause describes in detail a number of additional steps the parties must take, including: (1) an initial face-to-face meeting, (2) a more detailed written description of the dispute provided by the complaining party, and (3) a second face-to-face meeting. If the parties are unable to resolve the dispute after following all of these steps, "either party may thereafter file suit against the other" or commence an agreed-upon alternative dispute resolution process. The dispute resolution clause further states: "The procedures agreed upon in this section must be followed before any legal action can be commenced in a court of law, and failure to comply with this section is grounds for the dismissal without prejudice of any prematurely initiated lawsuit."

TNT transferred the intellectual property rights and licensing rights described in the license agreement to EdiZONE, LLC. In August 2020, EdiZONE transferred these intellectual property and contractual rights to Purple. In September 2020, Purple sent a letter to Advanced Comfort

stating its belief that Advanced Comfort's use of the licensed technologies to sell products under the Sleepy's brand name rather than under the Intellibed brand name that Advanced Comfort had used in the past was "outside the scope of the License" conveyed by the license agreement. In the letter, Purple cited three provisions of the license agreement in support of its argument that Advanced comfort had either exceeded the scope of the license or violated provisions of the license agreement. Advanced Comfort responded with a letter disputing Purple's contentions.

In November 2020, Purple sued Advanced Comfort. Purple asserted claims for patent and trademark infringement, arguing that because Advanced Comfort had exceeded the scope of the license agreement, it had violated Purple's intellectual property rights. Purple also brought Lanham Act claims, misappropriation of trade secrets claims, and Utah deceptive trade practices and unfair competition claims. All of these claims were based on Purple's allegations that Advanced Comfort exceeded the scope of license agreement. Finally, Purple sought a declaration from this court that EdiZONE properly transferred its rights under the license agreement to Purple.

Advanced Comfort countersued. It brought claims for declaratory judgment seeking a declaration regarding rights and obligations under the license agreement and a declaration that EdiZONE's transfer of rights to Purple was invalid. Advanced Comfort also asserted state-law claims for tortious interference with prospective economic relations, tortious interference with contract, breach of contract, and breach of the implied covenant of good faith and fair dealing.

Advanced Comfort moved to dismiss most of Purple's claims, arguing that it did not exceed the scope of the license as a matter of law. Advanced Comfort also argued that Purple's action should be dismissed because it did not follow the dispute resolution procedures outlined in the license agreement prior to filing suit. After the parties briefed Advanced Comfort's motion to dismiss, the court ordered that the portion of the motion seeking dismissal for a failure to follow

3

dispute-resolution procedures be converted to a motion for summary judgment. The court allowed further briefing on whether there was evidence that Purple had complied with these procedures. In its brief, Purple conceded that it did not follow all of the dispute resolution procedures outlined in the license agreement prior to filing the lawsuit.

Purple moved to dismiss the tortious interference, breach of contract, and breach of the covenant of good faith and fair dealing counterclaims.

## ANALYSIS

### I. PURPLE'S ACTION AGAINST ADVANCED COMFORT

The threshold issue presented by Advanced Comfort's motion to dismiss, which the court converted in part to a motion for summary judgment, is whether Purple's action should be dismissed for failure to comply with the dispute-resolution clause of the license agreement. Purple concedes that it did not comply with the procedures prior to filing suit. It argues, however, that the license agreement did not require it to comply with those procedures for two reasons. The court addresses each of these arguments in turn.

*A.  Interpretation of the Dispute-Resolution Clause*

First, Purple contends that the language of the dispute-resolution clause applies only to claims for breach or termination of the contract, not the infringement, misappropriation, and other associated claims asserted in its action. The key portion of the dispute-resolution clause—Paragraph 12.5(a)—reads as follows:

> Any dispute arising from a notice of breach under Paragraph 12.3 above or arising from termination of the License under Paragraphs 12.1(c), 12.1(d), 12.1(e), 12.1(f), or 12.1(g) shall be raised within thirty (30) days following the end of the applicable cure period specified in Paragraph 12.3 or the date of termination provided for under Paragraphs 12.1(c), 12.1(d), 12.1(e), 12.1(f), or 12.1(g), or the dispute will be deemed waived . . . . Before any necessary legal

> action is pursued by one Party against another Party of this Agreement pertaining to this Agreement or any alleged breach of this Agreement, including but not limited to an uncured breach or other event resulting in termination as provided in this Agreement, any such dispute will be raised in a written notice as provided in this paragraph above . . . .

Purple argues that the first sentence of this paragraph defines the object of the paragraph as a whole: disputes regarding alleged breaches to the contract, as defined by Paragraph 12.3, and disputes regarding termination of the license agreement, which is controlled by Paragraph 12.1. Purple asserts that the second sentence, which describes the disputes between the parties that are subject to the mandatory dispute-resolution procedures, must be read in context with the first sentence to mean that the dispute-resolution process applies only to disputes regarding breach or termination of the agreement. Because Purple did not raise any breach of contract or termination claims, the argument goes, it was not required to engage in the dispute-resolution process prior to filing suit.

The court disagrees with Purple's interpretation. The second sentence unambiguously states that the dispute-resolution procedures are required before filing *either* a legal action "pertaining to this Agreement" *or* a legal action pertaining to "any alleged breach of this Agreement." The second sentence further clarifies that the dispute-resolution requirement includes, but "is not limited to," actions for breach or termination of the contract. Thus, the plain language of the second sentence clearly forecloses the interpretation advanced by Purple—that the dispute-resolution requirement is limited to actions for breach or termination.

In sum, although courts may look to surrounding language to discern the meaning of a particular contractual term, *Glenn v. Reese*, 225 P.3d 185, 189 (Utah 2009) (courts must "consider each contract provision . . . in relation to all of the others" (alteration in original) (citation omitted)),

5

this interpretive tool cannot be used to contradict the plain language of the contract, *see O'Keefe v. Utah State Ret. Bd.*, 956 P.2d 279, 281 (Utah 1998) ("[U]nambiguous language may not be interpreted to contradict its plain meaning."). Accordingly, the dispute-resolution procedures must be satisfied prior to bringing an action "pertaining to" the license agreement.

        B.        *Application of the "Pertaining to" Language*

Second, Purple argues that the dispute-resolution clause does not apply because its action does not "pertain to" the license agreement. It cites caselaw holding that a licensor of intellectual property rights may bring an action for infringement or misappropriation if the licensee exceeds the scope of the license. *See Gen. Talking Pictures Corp. v. W. Elec. Co.*, 305 U.S. 124, 126 (1938) ("Any use beyond the valid terms of a license is, of course, an infringement of a patent."); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) ("[I]f 'a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.' " (alteration in original) (citation omitted)). Purple contends that because a claim for breach of the license agreement is distinct from an infringement or misappropriation claim, its action is not related to the agreement.

But caselaw authorizing Purple to bring infringement and other related claims based on its assertion that Advanced Comfort exceeded the scope of the license agreement does not resolve the central issue before the court: whether Purple's legal action pertains to the license agreement. The answer to this question is clearly yes. In Purple's operative complaint, it alleges that the license agreement contains several restrictions and requirements that were violated by Advanced Comfort. Purple repeatedly states that its infringement, misappropriation, and other related claims are based upon Advanced Comfort's actions "outside the scope of the License Agreement." Advanced Comfort denies these allegations and argues that it complied with all of the provisions of the

agreement. In order to adjudicate Purple's claims, therefore, the court would be required to interpret various provisions of the license agreement. The factfinder would also need to determine whether Advanced Comfort had taken any action that violated the agreement, which would give rise to Purple's infringement and misappropriation claims. Thus, Purple's action pertains to the license agreement. Indeed, the agreement is central to the litigation.

    C.    *Conclusion*

The license agreement required Purple to comply with the dispute-resolution procedures prior to filing a lawsuit because its lawsuit pertains to the agreement. Purple concedes that it did not comply with those procedures. Accordingly, Advanced Comfort is entitled to summary judgment on its affirmative defense that Purple violated the dispute-resolution clause. Pursuant to paragraph 12.5(d) of the license agreement, the court dismisses Purple's action without prejudice.

## II.    ADVANCED COMFORT'S COUNTERCLAIMS AGAINST PURPLE

Purple also filed a motion to dismiss several of Advanced Comfort's counterclaims. The court, however, determines that this motion is moot because the court lacks subject matter jurisdiction over Advanced Comfort's counterclaims.

The court "must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings." *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270–71 (10th Cir. 1998). In its counterclaim complaint, Advanced Comfort alleges that the sole basis for jurisdiction over the counterclaims is that they are "ancillary to the main action brought by Purple." *See* 28 U.S.C. § 1367(a) "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). Because the court dismisses Purple's action, it no longer has

7

supplemental jurisdiction over Advanced Comfort's counterclaims.[1] The court, therefore, dismisses Advanced Comfort's counterclaim action without prejudice.

## CONCLUSION AND ORDER

For the above-stated reasons, the court ORDERS as follows:

1) The court GRANTS IN PART Advanced Comfort's motion to dismiss, which the court converted in part to a motion for summary judgment. ECF No. 46. The court dismisses Purple's action without prejudice.

2) The court finds that Purple's motion to dismiss is now MOOT. ECF No. 40. The court dismisses Advanced Comfort's counterclaim action without prejudice for lack of subject matter jurisdiction.

DATED September 28, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[1] Although two of Advanced Comfort's counterclaims for declaratory judgment are based upon the federal Declaratory Judgment Act, they do not give rise to federal question jurisdiction. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 17 (1983) ("[T]he Declaratory Judgment Act was intended to affect only the remedies available in a federal district court, not the court's jurisdiction . . . ."); *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 822 (10th Cir. 1981) ("It is settled that 28 U.S.C. [§] 2201 does not itself confer jurisdiction on a federal court where none otherwise exists. That statute was adopted by Congress to enlarge the range of remedies available in federal court, and does not extend subject matter jurisdiction to cases in which the court has no independent basis for jurisdiction.").